IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SELF INSURED SERVICES COMPANY, )
    Plaintiff, )
                      )
                      )
       v. )        Civil No. 3:18-cv-400 (DJN)
                      )
PANEL SYSTEMS, INC., )
    Defendant. )
                      )

## MEMORANDUM OPINION

Plaintiff Self Insured Services Company ("SISCO" or "Plaintiff") brings this action

against Defendant Panel Systems, Inc. ("Panel Systems" or "Defendant"), alleging that Panel

Systems has a contractual duty to indemnify it for all costs, claims and expenses, including

damages and attorney's fees, arising out of the litigation styled *Virginia Commonwealth*

*University Health System Authority, et al. v. Panel Systems, Inc., et al.*, Civil Action Number

3:18-cv-43 (REP). This matter comes before the Court by consent of the parties pursuant to 28

U.S.C. § 636(c)(1) on SISCO's Motion for Judgment on the Pleadings (ECF No. 18), moving

pursuant to Federal Rules of Civil Procedure 12(h)(2)(B) and 12(c) to enter judgment in its favor

on all five counts of the Counterclaim (ECF No. 14) filed by Panel Systems.

For the reasons set forth below, the Court orders that Plaintiff's Motion for Judgment on

the Pleadings (ECF No. 18) be GRANTED in part as to Counts II, III, and IV of Panel Systems'

Counterclaim and DENIED in part as to Counts I and V and Panel Systems' requests for

attorney's fees in this action.

# I. BACKGROUND

A Rule 12(c) motion for judgment on the pleadings utilizes the same standard as a 12(b)(6) motion. *Moore v. Franklin Credit Mgmt. Corp.*, 2010 WL 1308048, at *1 (E.D. Va. Apr. 2, 2010). Accordingly, in considering SISCO's Motion, the Court will view the facts in the light most favorable to Panel Systems, reserving its own judgment as to legal conclusions or unwarranted inferences. *Watkins v. SunTrust Mortg., Inc.*, 2010 WL 2812910, at *1 (E.D. Va. July 15, 2010); *Hudson v. Bank of Am., N.A.*, 2010 WL 2365588, at *1 (E.D. Va. June 11, 2010).

## A. Panel Systems' Health Plan

Panel Systems designs, fabricates and erects prefabricated steel buildings, employing fewer than eighty people. (Panel Systems, Inc.'s Countercl. ("Countercl.") (ECF No. 14) ¶ 5.) In June 2014, Panel Systems implemented the Panel Systems Health Care Plan (the "Plan") to provide health benefits to its employees. (Countercl. ¶ 6.) Panel Systems "self-funded" the Plan, meaning that the company and its employees contributed to the benefits. (Countercl. ¶ 6.) Panel Systems also obtained excess loss insurance from Transamerica Premier Life Insurance Company ("Transamerica"). (Countercl. ¶ 6.)

On April 30, 2015, Panel Systems and SISCO entered into a Plan Service Agreement, effective June 1, 2015. (Ex. 2 to Compl. ("2015 PSA") (ECF No. 1-3).) A year later, on June 1, 2016, the parties entered into a second Plan Service Agreement, effective immediately. (Ex. 3 to Compl. ("2016 PSA") (ECF No. 1-4)). Under both Plan Service Agreements (collectively, the "PSAs"), SISCO agreed to process "Plan benefit claims according to the terms and provisions of the [Summary Plan Description], using its established claim adjudication procedures." (2015 PSA at 4; 2016 PSA at 4.) By the terms of the PSAs, SISCO would act in a "ministerial capacity as a third party claims processor." (2015 PSA at 3; 2016 PSA at 3.) The PSAs also empowered

Panel Systems to, in its full legal discretion, "construe and interpret the terms and provisions of the Plan" and to "[d]elegate to any person or entity such powers, duties and responsibilities it deems appropriate." (2015 PSA at 4-5; 2016 PSA at 4-5.) And the Plan itself authorized Panel Systems, as the "Named Fiduciary and Plan Administrator," to delegate its "authority and discretion to interpret and construe the terms of the Plan and to determine any and all questions in relation to the administration, interpretation or operation of the Plan." (Ex. 1 to Compl. ("Plan Document") (ECF No. 1-2) at 6.)

Using its delegation power, Panel Systems delegated authority to SISCO to act as the independent fiduciary and plan administrator of the Plan. (Countercl. ¶ 9.) With this authority, SISCO handled all claims made under the Plan, submitted stop-loss claims to Transamerica and processed payments for covered claims. (Countercl. ¶ 10.) SISCO also opened and maintained a checking account in the Plan's name. (Countercl. ¶ 10.)

The PSAs further included two indemnification provisions. The first provision provided that "SISCO will hold [Panel Systems] harmless from all losses and damages incurred as a result of bad faith or intentional wrongful acts committed by SISCO, or its employees while performing its responsibilities under this agreement." (2015 PSA at 6; 2016 PSA at 6.) Under the second provision, Panel Systems agreed:

> to defend, indemnify, and save harmless SISCO and its employees from any and all loss, costs, fines, penalties, liability, judgments, claims and expenses, or damages of any kind including attorney's fees arising out of: [1] [Panel Systems'] performance, or lack thereof, of its duties and obligations under the Plan or this Agreement; [2] Stop Loss Carrier or unrelated Business Associate's performance, or lack thereof, of their duties and obligations under the Plan; [3] The good faith performance by SISCO, SISCO's contractors/subcontractors, of their respective duties to [Panel Systems] under this Agreement; [4] Actions taken by SISCO at the direction of [Panel Systems]; [and 6,] Responsibilities performed by SISCO under this agreement.

(2015 PSA at 6; 2016 PSA at 6.)

3

## B.    Dispute Over Payment of M.L.'s Medical Benefits

On May 11, 2016, M.L.,[1] a beneficiary of the Plan and dependent of a Panel Systems employee, presented to the Medical College of Virginia Hospital ("MCV Hospital") after asphyxiating on a popcorn kernel. (Countercl. ¶ 12.) On May 17, 2016, MCV Hospital physicians notified M.L.'s parents that M.L. had no brain activity and that they wished to perform an apnea test to confirm their diagnosis. (Countercl. ¶ 13.) On May 19, 2016, M.L.'s parents sought to enjoin the Virginia Commonwealth University Health Systems Authority (the "Authority") from performing the apnea test. (Countercl. ¶ 14.) The Richmond City Circuit Court denied the parents' request for an injunction on June 10, 2016, and M.L.'s parents immediately filed a notice of appeal to the Supreme Court of Virginia. (Countercl. ¶ 15.) The Virginia Supreme Court entered an order on June 14, 2016, prohibiting the Authority from performing the apnea test until that court resolved the appeal. (Countercl. ¶ 16.) The Virginia Supreme Court further denied the Authority's request for an expedited hearing. (Countercl. ¶ 17.) Unable to perform the apnea test, the Authority continued to provide medical care to M.L. until she passed away on November 1, 2016. (Countercl. ¶ 17.)

From her admission to MCV Hospital until her passing, M.L. incurred $1,682,066.77 in treatment costs, which the Authority and MCV Associated Physicians submitted to SISCO for claims processing. (Countercl. ¶ 18.) SISCO's Claims Settlement Manager, Ann Cook, sent an email on October 10, 2016, advising SISCO's Audit Unit to deny all medical expenses accrued in treating M.L. after May 31, 2016. (Countercl. ¶ 19; Ex. A to Countercl. ("Cook Email") (ECF No. 14).) Ms. Cook reasoned that, because doctors officially diagnosed M.L. as brain dead on

---

[1]     In keeping with the prior litigation on this matter and the parties' practice, the Court will refer to M.L. by her initials to respect the privacy of her family.

May 31, any services after that date were either not medically necessary, experimental or court-ordered, none of which the Plan covered.  (Cook Email.)

On October 11, 2016, SISCO requested a refund from MCV Associated Physicians for $30,623.20, which reflected amounts that SISCO had already paid for medical services provided to M.L. after May 31, 2016.  (Countercl. ¶ 20.)  MCV Associated Physicians appealed the refund request and SISCO denied the appeal, though SISCO agreed to review the issue if MCV Associated Physicians submitted additional documents supporting its claims.  (Countercl. ¶ 20.)

MCV Associated Physicians submitted all of M.L.'s medical records to SISCO on March 10, 2017.  (Countercl. ¶ 21.)  The documents confirmed that M.L.'s treating physicians diagnosed her as brain dead on May 31, 2016, rendering any services provided after that date medically unnecessary under the terms of the Plan.  (Countercl. ¶ 21.)  Accordingly, on April 21, 2017, Ms. Cook reaffirmed that the Plan did not cover expenses incurred after May 31, 2016.  (Countercl. ¶ 22.)

However, on May 10, 2017, the Authority and MCV Associated Physicians appealed SISCO's second denial of coverage and, on May 15, 2017, SISCO reversed its previous decision, deciding that the Plan in fact covered M.L.'s post-May 31, 2016 expenses.  (Countercl. ¶¶ 23, 27.)  This reversal occurred without the presentation of any new evidence.  (Countercl. ¶ 24.)  Instead, Dick Sigwarth, SISCO's Vice President of Operations, simply overruled the earlier denials.  (Countercl. ¶ 24.)

Around the same time that SISCO reversed course and granted coverage of M.L.'s post-May 31 expenses, in April and May 2017, SISCO and Cigna entered into contract negotiations for SISCO to work on Cigna's Open Access Plus and LocalPlus networks.  (Countercl. ¶ 25.)  MCV Associated Physicians and the Authority are both providers within Cigna's network.

(Countercl. ¶ 26.) According to Panel Systems, Cigna had an interest in its providers getting paid, and Cigna delayed approval of the SISCO deal until it received assurances that SISCO would pay the M.L. expenses. (Countercl. ¶ 26.)

Following approval of the M.L. expenses, SISCO submitted a stop-loss claim with Transamerica on Panel Systems' behalf, requesting $1,360,728.96 for expenses relating to M.L.'s treatment. (Countercl. ¶ 28.) Transamerica denied this claim on June 29, 2017, finding that the treatment did not meet the Plan's definition of medically necessary care. (Countercl. ¶ 28.) In response, on July 26, 2017, Mr. Sigwarth arranged for Panel Systems to receive an executive summary of M.L.'s hospital stay, calling Panel Systems' President, Barry Unger, that same day to ask whether Panel Systems intended to approve coverage of the benefits. (Countercl. ¶ 29.) Panel Systems had not heard from SISCO about the M.L. coverage dispute until that point, and SISCO had never previously asked for Panel Systems to make a coverage determination. (Countercl. ¶ 29.) In its conversations with Panel Systems, SISCO stated that it had changed its position on M.L.'s coverage after reviewing additional documentation. (Countercl. ¶ 30.) Over the next few months, SISCO contacted Panel Systems to request approval of the coverage, but Panel Systems never approved the expenses. (Countercl. ¶ 31.)

## C.  Underlying Litigation

On January 18, 2018, MCV Associated Physicians and the Authority (collectively, the "MCV Plaintiffs") sued Panel Systems and SISCO (the "MCV Lawsuit"), alleging that both parties violated their obligations under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Ex. 4 to Compl. ("MCV Compl.") (ECF No. 1-5).) Specifically, the MCV Plaintiffs alleged, in Count I, that SISCO and Panel Systems had violated the MCV Plaintiffs' right to benefits under the Plan and, in Count II, that SISCO and Panel Systems had violated

6

their fiduciary responsibilities under ERISA. (MCV Compl. ¶¶ 51-74.) In Count III, the MCV Plaintiffs sought declaratory relief as to SISCO's request for a refund. (MCV Compl. ¶¶ 75-80.) The MCV Lawsuit ended in August 2018, with all parties stipulating to dismissal. (Civil No. 3:18-cv-43, ECF Nos. 44, 47-48.)

### D. Procedural History

Throughout the MCV Lawsuit, SISCO demanded that Panel Systems defend and indemnify it pursuant to the PSAs. (Compl. (ECF No. 1) ¶ 39.) After Panel Systems refused to do so, SISCO filed suit in this Court on June 7, 2018. (ECF No. 1.) In its Complaint, SISCO denies any liability to the MCV Plaintiffs, but claims entitlement to any costs that it incurred in defending the MCV Lawsuit. (Compl. ¶ 38.) SISCO claims that it had performed its contractual duties under the PSAs in good faith, and that Panel Systems therefore has a duty to indemnify it for all costs associated with the MCV Lawsuit. (Compl. ¶¶ 41-48.) SISCO further seeks payment for the costs, including attorney's fees, of bringing the present action against Panel Systems. (Compl. ¶¶ 49-52.)

Panel Systems filed its Answer (ECF No. 4) to SISCO's Complaint on July 3, 2018. On August 15, 2018, Panel Systems filed its Unopposed Motion for Leave to File a Counterclaim (ECF No. 10), which the Court granted on August 16, 2018 (ECF No. 13). On August 17, 2018, Panel Systems filed its Counterclaim (ECF No. 14).

### E. Panel Systems' Counterclaim

In Count I of its Counterclaim, Panel Systems alleges that, per the terms of the PSAs, SISCO must indemnify it for the MCV Lawsuit attorney's fees incurred because of SISCO's bad faith and intentional wrongful acts. (Countercl. ¶¶ 35-36.) Panel Systems contends that SISCO's adjudication of the M.L. treatment claims constituted "an intentional wrongful act done

in bad faith," because SISCO pushed for coverage of those claims out of self-interest and "without regard to the best interests of Panel Systems, the Plan, or the Plan participants and beneficiaries." (Countercl. ¶¶ 37-38.)

In Count II, Panel Systems accuses SISCO of knowingly making a false and material misrepresentation when it told Panel Systems that its decision to grant coverage of the post-May 31 M.L. expenses occurred after consideration of additional information and failed to disclose its relationship with Cigna. (Countercl. ¶ 41.) This misrepresentation, Panel Systems maintains, deprived Panel Systems of sufficient information to determine whether the Plan covered M.L.'s post-May 31 expenses, delaying its decision and resulting in the MCV Lawsuit, from which Panel Systems incurred litigation costs. (Countercl. ¶ 44.) Alternatively, in Count III, Panel Systems alleges the same misrepresentation as in Count II, but on a negligent misrepresentation theory. (Countercl. ¶¶ 45-48.)

In Count IV of its Counterclaim, Panel Systems contends that SISCO acted as a fiduciary under ERISA in administering the Plan and therefore had a duty to communicate complete and accurate information to Panel Systems and the Plan's beneficiaries, which SISCO breached when it failed to disclose its business relationship with Cigna. (Countercl. ¶¶ 50-52.) Because of SISCO's breach, Panel Systems alleges that it sustained attorney's fees in defending the MCV Lawsuit. (Countercl. ¶¶ 53-54.)

Finally, in Count V, Panel Systems alleges that SISCO had a common law fiduciary duty to act in the best interest of it, the Plan and the Plan's participants and beneficiaries. (Countercl. ¶ 56.) Panel Systems argues that SISCO breached this duty when it granted coverage of the post-May 31 M.L. expenses out of self-interest and did not disclose that interest. (Countercl. ¶¶ 57-

58.) Panel Systems asserts that this breach caused it to incur attorney's fees in the MCV Lawsuit. (Countercl. ¶ 59.)

### F. SISCO's Motion for Judgment on the Pleadings

On September 14, 2018, SISCO filed its Motion for Judgment on the Pleadings (ECF No. 18), moving the Court to grant judgment in SISCO's favor on Panel Systems' Counterclaim. In support of its Motion, SISCO alleges that none of Panel Systems' theories provide grounds for relief. (Br. Supp. Pl.'s Mot. J. on the Pleadings ("Pl.'s Br.") (ECF No. 19) at 1.) As to Count I of Panel Systems' Counterclaim, SISCO argues that the omission of the phrase "attorney's fees" from the PSAs' provision relating to SISCO's indemnification of Panel Systems and the subsequent inclusion of "attorney's fees" in the provision relating to Panel Systems' indemnification of SISCO demonstrate the parties' intent that SISCO would not be liable for Panel Systems' attorney's fees. (Pl.'s Br. at 12-14.)

Regarding Panel Systems' misrepresentation arguments in Counts II and III, SISCO responds that Virginia law does not recognize purely contractual breaches as grounds for separate tort actions. (Pl.'s Br. at 14-16.) Because Panel Systems' fraud allegations rely on SISCO's contractual duty to adjudicate claims under the Plan, SISCO argues that an independent common law duty does not support Panel Systems' misrepresentation claims. (Pl.'s Br. at 16.) In addition, SISCO contends that Panel Systems has not alleged fraud with sufficient particularity or with the necessary elements to survive its Motion. (Pl.'s Br. at 17-19)

As to Panel Systems' allegations that SISCO violated both statutory and common-law fiduciary duties, SISCO maintains that no such duties existed. (Pl.'s Br. at 19-29.) Specifically, SISCO responds to Panel Systems' claim that SISCO owed it a fiduciary duty under ERISA by arguing that: (1) 29 U.S.C. § 1132 does not authorize civil actions for the type of harm that

Panel Systems alleges resulted from SISCO's breach of a fiduciary duty; (2) in any case, SISCO did not serve as an ERISA fiduciary, because it performed only non-discretionary, ministerial functions; and, (3) if SISCO did serve as an ERISA fiduciary, it did not owe a duty to Panel Systems. (Pl.'s Br. at 20-26.) Regarding Panel Systems' common-law fiduciary theory, SISCO argues that Virginia common law does not recognize fiduciary duties arising solely from contractual relationships and that Panel Systems has not shown a non-contractual ground for creating a fiduciary relationship. (Pl.'s Br. at 26-28.)

Finally, SISCO challenges Panel Systems' prayer for attorney's fees and costs in the present action. (Pl.'s Br. at 28-29.) Specifically, SISCO argues that Panel Systems has no right to attorney's fees under either ERISA or the Plan, and therefore it must follow the American Rule that all parties to litigation pay their own way. (Pl.'s Br. at 28-29.)

On September 28, 2018, Panel Systems filed its Memorandum in Opposition to SISCO's Motion, (Def.'s Mem. Opp. Pl.'s Mot. J. on the Pleadings ("Def.'s Mem.") (ECF No. 25)), to which SISCO replied on October 4, 2018 (ECF No. 30), rendering the matter ripe for review.

## II.    STANDARD OF REVIEW

As mentioned, a Rule 12(c) motion for judgment on the pleadings utilizes the same standard as a 12(b)(6) motion. *Moore*, 2010 WL 1308048, at *1. Therefore, a motion for judgment on the pleadings tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion for judgment on the pleadings, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993). However, "the tenet

that a court must accept as true all of the allegations contained in a [counterclaim] is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III. CHOICE OF LAW

As a threshold matter, this Court must first determine the substantive law against which to measure the plausibility of Panel Systems' claims. For Count IV, the choice of law is obvious, as Panel Systems invokes a federal statute, ERISA, to govern its right to relief, meaning federal law controls that Count.

However, the other four counts that Panel Systems raises are state-law contract and tort claims. To determine the plausibility of Panel Systems' state-law claims, this Court, sitting in diversity, must apply the substantive law of the state in which it sits, including its choice-of-law

rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Virginia, courts

considering contract-related claims will give a choice-of-law provision in a contract the fullest

effect intended by the parties absent unusual circumstances.[2] *Hitachi Credit Am. Corp. v. Signet*

*Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)).

Undoubtedly, the parties express their intent most clearly in the words of the contract. *W.F.*

*Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 123 S.E.2d 377, 381 (Va. 1962). Here,

the PSAs provide that Iowa law "will be controlling in all matters relating to the interpretation

and validity of th[ese] Agreement[s] unless preempted by federal law." (2015 PSA at 6; 2016

PSA at 6.) Therefore, Iowa law clearly governs Count I of Panel Systems' Counterclaim, which

requires interpretation of the PSAs to determine Panel Systems' right to relief.

As to Counts II, III and V, the analysis is more nuanced. Although these counts sound in

tort[3] and would normally fall under Virginia's "place of the wrong" rule, if Panel Systems' tort

claims fall within the scope of the PSAs' choice-of-law provisions, Iowa law will govern them.

*Run Them Sweet, LLC v. CPA Global Ltd.*, 224 F. Supp. 3d 462, 466-68 (E.D. Va. 2016). As the

Fourth Circuit has explained, "[w]here a choice of law clause in [a] contract is sufficiently broad

to encompass contract-related tort claims such as fraudulent inducement, other courts have

honored the intent of the parties to choose the applicable law." *Hitachi*, 166 F.3d at 628 (citing

---

[2]      Neither party contests the enforceability of the PSAs' choice-of-law provisions, so the
Court need not consider their validity at this time. Nonetheless, "unusual circumstances" would
exist where there is "no reasonable basis" for the choice-of-law provision, or where the parties
agreed to the provision by improper means. *Tate*, 25 S.E.2d at 321; Restatement (Second) of
Conflict of Laws § 187 (1971). The Court finds that no such unusual circumstances exist to find
the PSAs' choice-of-law provisions invalid.

[3]      Virginia courts classify fraudulent and negligent misrepresentation as tort claims.
*Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346-47 (Va. 1998).
Common law breach of a fiduciary duty constitutes a tort claim as well. *General Assur. of Am.,*
*Inc. v. Overby-Seawell Co.*, 533 F. App'x 200, 206 (4th Cir. 2013).

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992) (applying Pennsylvania law to fraudulent inducement claim, because contract provided that "it is to be governed by, and construed in accordance with, the laws of . . . Pennsylvania"); *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991) (finding that choice-of-law provision in contract covered fraudulent inducement claim)). In *Hitachi*, the applicable choice-of-law provision provided for application of Virginia law "in the interpretation of '[t]his Agreement and the rights and obligations of the parties hereunder . . . including all matters of construction, validity and performance.'" *Id.* at 624. The Fourth Circuit found this language sufficiently broad to encompass the plaintiff's fraudulent inducement claim. *Id.* at 628. Use of less sweeping language in a choice-of-law provision may still cover contract-related tort claims. *See, e.g., Run Them Sweet, LLC*, 224 F. Supp. 3d at 468 n.7 ("[N]othing in *Hitachi* indicates that a choice-of-law provision must use that exact language for the contractually-selected law to apply to contract-related tort claims."). For example, in *Run Them Sweet*, the court found a choice-of-law provision stating that the agreement "shall be 'governed and construed in accordance with' Virginia law" sufficiently broad to cover contract-related torts claims. *Id.* at 466.

Here, the language of PSAs' choice-of-law provisions does not demonstrate a broad intent by the parties to apply Iowa law to all contract-related tort claims. Although the parties here agreed that Iowa law would be "controlling" — which mimics the *Run Them Sweet* parties' use of the broadly interpreted word "governed" in their contract — the parties then limited the matters over which Iowa law would control to only those related to contract interpretation and validity. *Id.* at 466-67. By agreeing that Iowa law would control only contract interpretation and validity, Panel Systems and SISCO established an intent that the law of another forum could govern other issues. Indeed, the language chosen by the parties in this case proves comparable to

the choice of narrower verbs like "construed," which the *Run Them Sweet* court found would, if

alone in a choice-of-law provision, cover only contract claims. *Id.* (citing *Caton v. Leach Corp.*,

896 F.2d 939, 943 & n.3 (5th Cir. 1990)). Furthermore, the PSAs themselves fail to indicate a

broader intent that Iowa law govern all matters relating to the contracts. The choice-of-law

provisions fall under the heading "Other," and appear among miscellaneous provisions that do

not select Iowa as a preferred forum. (2015 PSA at 6; 2016 PSA at 6); *see id.* at 467 (finding

that two characteristics of the underlying contract — the inclusion of a choice-of-law provision

in a separate section titled "Governing Law" and the pairing of the provision with a forum-

selection clause that selected the same forum — helped indicate the parties' broader intent).

Ultimately, the words chosen by Panel Systems and SISCO do not demonstrate an intent that

Iowa law govern both the contract and any related claims; thus, Virginia's "place of the wrong"

rule will determine the choice of law for Panel Systems' tort claims.

It is well established that "it is the place of the wrong (*lex loci delicti*) that determines

which State's substantive law applies in a tort action brought in Virginia." *Quillen v. Int'l*

*Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (italics in original) (citing *McMillan v.*

*McMillan*, 253 S.E.2d 662, 663 (Va. 1979)). The place of the wrong denotes the place where

"'the last event necessary to make an act[or] liable for an alleged tort takes place.'" *Id.* (quoting

*Miller v. Holiday Inns, Inc.*, 436 F. Supp. 460, 462 (E.D. Va. 1977)). In the fraud context, "the

place of the wrong is where the loss is sustained . . . ." *Jordan v. Shaw Indus., Inc.*, 1997 WL

734029, at *3 (4th Cir. Nov. 26, 1997) (citations omitted). For Counts II and III, Panel Systems

affirms that it received and relied upon SISCO's alleged misrepresentations at its principal place

of business in Woodbridge, Virginia. (Countercl. ¶¶ 1, 29-31.) Panel Systems also alleges that

the damages caused by SISCO's fraud accrued as part of litigation in this Court. (Countercl.

¶¶ 32, 44, 48.) Thus, Virginia law clearly governs whether Panel Systems has stated a plausible claim in Counts II and III.

For breaches of a fiduciary duty, like the one alleged in Count V, "the occurrence of the plaintiff's injury marks the last event necessary to establish liability." *General Assur. of Am., Inc.*, 533 F. App'x at 206. Injury occurs at the point of the wrongful act, not where the economic impact ultimately accrues. *Id.* (citing *Milton v. IIT Research Inst.*, 138 F.3d 519, 522 (4th Cir. 1998)). Here, SISCO's failure to disclose its conflicting interests when requesting approval of the M.L. expenses constituted the allegedly wrongful act that ultimately caused Panel Systems' harm. (Countercl. ¶¶ 31, 57-58.) Panel Systems received SISCO's misrepresentations at its principal place of business in Woodbridge, Virginia. (Countercl. ¶¶ 1, 29-31.) Thus, Virginia law governs Count V of Panel Systems' Counterclaim.

## IV. ANALYSIS

As discussed, Panel Systems raises five separate counts for recovery of its attorney's fees from the MCV Lawsuit. Because SISCO moves to dismiss each of these counts in its Motion for Judgment on the Pleadings, the Court will consider all five counts in turn.

### A. Panel Systems Has Alleged Sufficient Facts to State a Plausible Claim in Count I of Its Counterclaim.

In Count I of its Counterclaim, Panel Systems alleges that SISCO must reimburse its attorney's fees from the MCV Lawsuit, because SISCO committed an intentionally wrongful act or otherwise acted in bad faith when it recommended coverage of the post-May 31 M.L. expenses out of self-interest. (Countercl. ¶¶ 35-38.) As the mechanism to obtain the fees its seeks, Panel Systems points to the first indemnification provision in the PSAs, pursuant to which SISCO agreed to "hold [Panel Systems] harmless from all losses and damages incurred as a result of bad faith or intentional wrongful acts committed by SISCO, or its employees while

performing responsibilities under th[ese] agreement[s]." (Countercl. ¶ 36; 2015 PSA at 6; 2016 PSA at 6.) As explained, Iowa law governs Count I.

In Iowa, a court may award attorney's fees "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney's fee." Iowa Code § 625.22 (2005). "A written contract must contain a clear and express provision regarding attorney fees and litigation expenses in order for a court to be authorized to add attorney fees and litigation expenses to a favorable judgment." *FNBC Iowa, Inc. v. Jennessey Grp., L.L.C.*, 759 N.W.2d 808, 810 (Iowa Ct. App. 2008) (citing *EFCO Corp. v. Norman Highway Constructors, Inc.*, 606 N.W.2d 297, 301 (Iowa 2000)). As a rule, an indemnitee may recover reasonable attorney's fees associated with "the matter against which he is indemnified, provided . . . [that the indemnitee] acts in good faith and with due diligence in . . . defending such suits." *Bunce v. Skyline Harvestore Sys., Inc.*, 348 N.W.2d 248, 250 (Iowa 1984). However, if the contractual parties agreed to indemnification "incident to a contract whose main purpose is not indemnification," a court should strictly construe the indemnification provision in favor of the indemnitor. *Martin & Pitz Assocs., Inc. v. Hudson Constr. Servs., Inc.*, 602 N.W.2d 805, 809 (Iowa 1999) (quoting 41 Am. Jur. 2d *Indemnity* § 13, at 356 (1995)). Courts should aim "to give effect to the intention of the parties" by looking "to the words of the indemnifying agreement." *Bunce*, 348 N.W.2d at 250. Ultimately, "[i]f a 'hold harmless' agreement is to be given a realistic construction, it must, in the absence of language evidencing a contrary intent, be held to include [the costs of defending a third-party lawsuit, including attorney's fees]." *Id.* at 251.

Although SISCO invites the Court to determine the meaning of the PSAs' indemnification provisions with respect to Panel Systems' right to attorney's fees, the Court will not do so at this stage. Instead, the Court will consider only whether Panel Systems has alleged

16

sufficient facts in its Counterclaim, viewed in a light most favorable to it, to present a plausible right to relief under the Court's own interpretation of the applicable law. With respect to Count I, the Court finds that Panel Systems has done just that.

Viewing the facts most favorably to Panel Systems, the Court accepts the following as true. SISCO twice rejected the claims for M.L.'s post-May 31 expenses. (Countercl. ¶¶ 18-19, 21-22.) When SISCO reversed course and granted coverage of all of the M.L. expenses in May 2017, SISCO had been in talks with Cigna to enter a lucrative business relationship. (Countercl. ¶¶ 23-26.) Following Transamerica's denial of SISCO's stop-loss request, Mr. Sigwarth called Panel Systems' President on July 26, 2017, and stated that SISCO had changed its mind on the M.L. expenses after reviewing additional documentation, even though it had not viewed any additional documentation. (Countercl. ¶ 24, 28-31.) SISCO at no point disclosed to Panel Systems that it had a potential conflict of interest due to its business relationship with Cigna. This alleged misrepresentation resulted from SISCO's performance of its contractual responsibilities to adjudicate claims under the Plan and to refer, with recommendations, unresolved claims disputes to Panel Systems. (2015 PSA at 4; 2016 PSA at 4.)

Based on the above, Panel Systems has alleged sufficient facts to make a plausible claim that SISCO acted with wrongful intent and in bad faith in the performance of its contractual duties, which resulted in the MCV Lawsuit giving rise to Panel Systems' attorney's fees. Because Iowa law recognizes that "hold harmless" provisions include attorney's fees without evidence of contrary intent,[4] *Bunce*, 348 N.W.2d at 251, and because SISCO agreed to hold Panel Systems harmless for its intentional wrongdoing and bad faith in the performance of its

---

[4] Although SISCO alleges that the PSAs demonstrate the parties' intent not to indemnify Panel Systems for attorney's fees, (Pl.'s Br. at 13-14), the Court will not reach the merits of that argument on a motion for judgment on the pleadings.

duties, Panel Systems has stated a plausible claim that the PSAs entitle it to indemnification from SISCO.

**B.     The Court Grants Judgment to SISCO on Counts II and III of Panel Systems' Counterclaim.**

In Counts II and III of its Counterclaim, Panel Systems contends that SISCO fraudulently or negligently made a false and material misrepresentation when it told Panel Systems that its decision to cover the post-May 31 M.L. expenses resulted from consideration of additional information, without disclosing its pending business deal with Cigna. (Countercl. ¶¶ 40-48.) Panel Systems alleges that it relied on this misrepresentation, delaying its decision on whether to cover the M.L. expenses and resulting in the MCV Lawsuit from which it incurred the attorney's fees. (Countercl. ¶¶ 40-48.) As discussed, Virginia law applies to both Counts II and III.

In Virginia, "[a] plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled.'" *Richmond Metro. Auth.*, 507 S.E.2d at 346 (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). Similarly, negligent misrepresentation, which Virginia courts also call constructive fraud, requires clear and convincing evidence "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of . . . reliance upon the misrepresentation." *Mortarino v. Consultant Eng'g Servs.*, 467 S.E.2d 778, 782 (Va. 1996) (citing *Alequin*, 439 S.E.2d at 390).

Virginia further requires that the "duty tortiously or negligently breached" by a party committing actual or constructive fraud "be a common law duty, not one existing between the parties solely by virtue of [a] contract." *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va.

18

1991) (internal citations omitted); *see also Richmond Metro. Auth.*, 507 S.E.2d at 346 (entering

summary judgment for a construction contractor who provided fraudulent progress reports to the

plaintiff, because the contractor breached only duties assumed by contract). Accordingly, a

plaintiff seeking relief for the breach of a contractual duty cannot also receive relief in tort

without a corresponding common law duty. *Dunn Const. Co. v. Cloney*, 682 S.E.2d 943, 946

(Va. 2009); *see also Vanguard Military Equip. Corp. v. David B. Finestone Co.*, 2 492 (E.D. Va.

1997) (explaining that to properly plead a cause of action in tort, "[t]he duty owed by [the

defendant] to [the plaintiff] must be derived from some source of law other than *ex contractu*").

Here, Panel Systems has not alleged sufficient facts to establish that SISCO owed it an

independent common law duty. By Panel Systems' own facts, SISCO's alleged

misrepresentation relates solely to SISCO's contractual duties to adjudicate claims and refer any

unresolved questions to Panel Systems. (Countercl. ¶¶ 40-48; 2015 PSA at 4; 2016 PSA at 4.)

Panel Systems has not presented any other facts to suggest that SISCO breached a noncontractual

and independent legal duty to disclose its relationship with Cigna. Thus, even after accepting

Panel Systems' alleged facts as true, the Court finds that Panel Systems has not stated a plausible

claim to relief in Counts II and III of its Counterclaim.

### C. The Court Grants Judgment to SISCO on Count IV of Panel Systems' Counterclaim.

In Count IV of its Counterclaim, Panel Systems alleges that, under ERISA, SISCO acted

in a fiduciary capacity as the administrator of the Plan. (Countercl. ¶ 50.) Panel Systems

contends that, as a fiduciary, SISCO had a duty to communicate complete and accurate

information to it and to the Plan's participants and beneficiaries, including an affirmative duty to

disclose conflicts of interest. (Countercl. ¶¶ 51-52.) Because SISCO misrepresented the true

reasons for recommending coverage of the M.L. expenses, Panel Systems alleges that it could

not reach a proper decision on whether to authorize payment of those claims, resulting in the MCV Lawsuit and attorney's fees that it seeks. (Countercl. ¶¶ 53-54.) Panel Systems cites to 29 U.S.C. § 1132 in support of its right to relief on this Count. (Countercl. ¶¶ 49-54.) As Count IV relates to a federal statute, the Court will analyze Panel Systems' right to relief under federal law.

"ERISA is a 'comprehensive and reticulated statute' which does not provide remedies other than those expressly set forth by Congress." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia*, 102 F.3d 712, 713 (4th Cir. 1996) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985)). Thus, for Panel Systems to obtain relief under ERISA, it must have a statutory mechanism that authorizes its cause of action. Although citing to Section 1132 generally, Panel Systems does not specify which subsection of Section 1132 provides it with a right to relief. Therefore, the Court must determine whether Panel Systems has alleged sufficient facts to prove a plausible right to relief under any of the eleven possible civil actions authorized by Section 1132. Notably, all but one of the eleven possible civil actions do not apply to Panel Systems' allegations, as Panel Systems either is not the appropriate plaintiff, does not seek equitable relief or is not suing under the situational predicate explained in the statute. *See* 29 U.S.C. § 1132(a)(1), (3)-(11) (authorizing parties other than plan sponsors and fiduciaries to bring civil actions or otherwise authorizing only equitable relief or relief in certain situations that do not apply here). Thus, Panel Systems must rely on 29 U.S.C. § 1132(a)(2), which authorizes a plan fiduciary to bring a civil action for "appropriate relief" under 29 U.S.C. § 1109.

29 U.S.C. § 1109 provides that "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be

personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." Civil actions under this section "must be brought in a representative capacity on behalf of the plan as a whole, because 'only relief "for the plan itself" is available under [Section 1109].'" *Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F. Supp. 2d 495, 502 (E.D. Va. 2002) (quoting and citing *Russell*, 473 U.S. at 142, n. 9; *Coyne & Delany*, 102 F.3d at 714-15; *Edmond v. Hughes Aircraft*, 1998 WL 228200, at *9 (4th Cir. May 8, 1998)); *see also Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 361-362 (4th Cir. 2014) (noting that proof of loss to the plan forms part of a plaintiff's prima facie Section 1109 claim).

Here, Panel Systems does not allege that it seeks relief for harm done to the Plan itself. In fact, Panel Systems' own facts affirm that the MCV Lawsuit attorney's fees constitute the only damage caused by SISCO's alleged breach of its fiduciary duties. (Countercl. ¶ 53 ("As a result of SISCO's breach of its fiduciary duty, Panel Systems has incurred damages in the form of attorneys' fees in the [MCV] Lawsuit.").) Although Panel Systems cites to *Register v. Cameron & Barkley Co.* to argue that the Court should broadly interpret "losses to the plan" in Section 1109, (Def.'s Mem. at 19-20), that case still required proof of "actual losses to the [plan]." 467 F. Supp. 2d 519, 529 (D.S.C. 2006). Other cases that Panel Systems cites to in its opposing brief also demanded some proof of actual losses to the plans at issue. *See Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 679-81 (6th Cir. 2008) (holding that physician participants could sue under Section 1109 because "the nature of the relief" sought would be the payment of money to the plan); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995) (finding an actual diminution in the underlying plan's value after comparing the plan's assets before and after the alleged breach); *Acosta v. Davis-Page Mgmt. Sys., LLC*, 2018 WL 1405482, at *6 (E.D. Va. Feb. 13, 2018) (recommending the restoration of actual losses to the underlying 401(k) and

health plans), *report and recommendation adopted*, 2018 WL 1400967 (E.D. Va. Mar. 20, 2018).

Unlike the plaintiffs in the cases it cites, Panel Systems has not alleged any loss to the Plan at issue here, nor will its desired relief inure to the benefit of the Plan. Without allegations of actual losses to the Plan, ERISA does not provide the vehicle through which Panel Systems may obtain its desired relief. Therefore, the Court grants judgment for SISCO on Count IV of Panel Systems' Counterclaim.

### D. Panel Systems Has Alleged Sufficient Facts to Support Count V of Its Counterclaim.

In Count V, Panel Systems contends that, by deciding to grant coverage of the M.L. expenses to appease Cigna and not disclosing that conflict, SISCO breached its common-law fiduciary duty to Panel Systems, the Plan and the Plan's beneficiaries. (Countercl. ¶¶ 55-58.) Panel Systems further contends that the attorney's fees it paid in defense of the MCV Lawsuit resulted from SISCO's breach. (Countercl. ¶ 59.) As explained, Virginia law governs the alleged breach in Count V.

Virginia law requires the party claiming breach of a common law fiduciary duty to prove "the requisite duty, breach, and resulting damages." *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 666 (Va. 1994). As with other tort claims, a plaintiff alleging breach of a fiduciary duty must show that the duty owed by the defendant arose from a noncontractual source. *August Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293-94 (Va. 2007) (citing *Foreign Mission Bd.*, 409 S.E.2d at 148). However, when a fiduciary duty arises solely by virtue of a contract, a plaintiff may still bring a breach of fiduciary duty action by showing that the defendant "'[took] advantage of the special position occupied by a fiduciary to his benefit and to the detriment of the other party to whom the fiduciary duty is owed by doing something beyond merely failing to perform a duty imposed by the contract.'" *Perry v. Paperboy Ventures, LLC*, 2005 WL 3476772, at *2 (Va. Cir.

22

Ct. Oct. 28, 2005) (quoting *First Health Servs. Corp. v. Baruch Def. Mktg., Inc.*, 1995 Va. Cir. LEXIS 1440, at *4-5 (Va. Cir. Ct. Jan. 3, 1995)).

Here, Panel Systems alleges that it delegated to SISCO the power and authority to act on its behalf in administering the Plan. (Countercl. ¶ 9.) The Court also accepts at this stage in the proceedings that SISCO handled all claims made under the Plan, submitted stop-loss claims to Transamerica and processed payments for covered claims without interference from Panel Systems. (Countercl. ¶¶ 10-11.) SISCO further opened and maintained a checking account in the Plan's name. (Countercl. ¶ 10.) And, although the PSAs defined SISCO's role as merely ministerial, the agreements gave Panel Systems authority to delegate substantial discretion to SISCO, which Panel Systems did. (Countercl. ¶ 9; 2015 PSA at 4-5; 2016 PSA at 4-5.)

These facts, taken as true, support a plausible finding that SISCO served as a fiduciary, but they do not allege a noncontractual and independent source of SISCO's fiduciary duty. Panel Systems alleges no special relationship beyond the duties that SISCO agreed to perform under contract. However, Panel Systems has alleged sufficient facts to suggest that SISCO did more than merely fail to perform its contractual duties and in fact took advantage of the special position it occupied. Specifically, Panel Systems' facts contend that SISCO granted coverage of the post-May 31 M.L. expenses out of self-interest and against the terms of the Plan. (Countercl. ¶¶ 21-26.) SISCO then urged Panel Systems to approve its grant of coverage without disclosing it business negotiations with Cigna. (Countercl. ¶¶ 28-31.) Panel Systems alleges, and the Court accepts as true, that SISCO's dishonesty delayed Panel Systems' decision on the M.L. expenses, resulting in the MCV Lawsuit. (Countercl. ¶¶ 31-34.)

Although Panel Systems' factual allegations do not support a plausible finding that SISCO owed it an independent, noncontractual fiduciary duty, they do assert sufficient

wrongdoing to support a plausible right to relief under Virginia law. Therefore, the Court finds

that Panel Systems has alleged sufficient facts in Count V of its Counterclaim.

### E.   The Court Will Not Address Panel Systems' Request for Attorney's Fees in this Action at this Stage in the Proceedings.

In its final prayer for relief, SISCO moves that this Court grant it judgment on Panel

Systems' requests, pursuant to both ERISA and the Plan, for attorney's fees in this action.

(Countercl. at 12.) However, SISCO misconstrues Panel Systems' requests for attorney's fees as

separately alleged causes of action, which they are not. As this Court has previously noted, a

request for attorney's fees in a civil action does not automatically constitute a separate cause of

action that a court may address on a motion for judgment on the pleadings. *Seneca Specialty Ins.*

*Co. v. Dockside Dolls, Inc.*, 2012 WL 3579879, at *4 (E.D. Va. June 22, 2012), *report and*

*recommendation adopted*, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012); *see also Budinich v.*

*Becton Dickinson & Co.*, 486 U.S. 1717, 1720-21 (1988) ("[I]t is indisputable that a claim for

attorney's fees is not part of the merits of the action to which the fees pertain."). Indeed, Panel

Systems' request for attorney's fees under ERISA could not possibly represent a separate cause

of action, because ERISA does not authorize a specific action for attorney's fees.[5] (Countercl. at

12, ¶ C.); 29 U.S.C. §§ 1132(a), 1132(g)(1). And Panel Systems likewise did not frame its

request for attorney's fees and expenses under the Plan as a separate cause of action, so the Court

will wait until it reaches judgment on the remaining counts of Panel Systems' Counterclaim

before deciding whether Panel Systems may receive attorney's fees under either the Plan or the

PSAs.

---

[5]   Of course, because Panel Systems' request for attorney's fees under ERISA is collateral to Count IV of its Counterclaim, Panel Systems can no longer obtain attorney's fees through that statute now that the Court has awarded judgment to SISCO on Count IV.

## V.    CONCLUSION

For the reasons set forth above, the Court GRANTS SISCO's Motion for Judgment on the Pleadings (ECF No. 18) as to Counts II, III and IV of Panel Systems' Counterclaim (ECF No. 14) and DENIES SISCO's Motion as to Counts I and V and Panel Systems' requests for attorney's fees in this matter.  An appropriate Order shall issue.

Let the Clerk forward a copy of this Memorandum Opinion to all counsel of record.

_____/s/_____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: October 22, 2018.